

Eastern District of Kentucky
FILED

FEB 15 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-164-GWU

TOMMY LAWSON,                                           PLAINTIFF,

VS:                          MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,           DEFENDANT,

## INTRODUCTION

Tommy Lawson brought this action to obtain judicial review of an

unfavorable administrative decision on his application for Supplemental Security

Income (SSI). The case is before the Court on cross-motions for summary

judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for

judicial analysis of benefit denial cases:

1.     Is the claimant currently engaged in substantial gainful activity? If
yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R.
404.1520(b), 416.920(b).

2.     Does the claimant have any medically determinable physical or
mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not
disabled. See 20 C.F.R. 404.1508, 416.908.

3.     Does the claimant have any severe impairment(s)--i.e., any
impairment(s) significantly limiting the claimant's physical or mental ability
to do basic work activities? If yes, proceed to step 4. If no, the claimant is
not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

4.     Can the claimant's severe impairment(s) be expected to result in
death or last for a continuous period of at least 12 months? If yes,
proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R.
404.920(d), 416.920(d).
5.     Does the claimant have any impairment or combination of

1

impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.     Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. Id. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Id.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Houston v. Secretary of Health

2

and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways that the Commissioner may meet his burden is through

3

the use of the medical-vocational guidelines.

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b), 416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the

4

lack of bilateral manual dexterity compromise a person's ability to do a full range of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

DISCUSSION

The Administrative Law Judge (ALJ) concluded that Lawson, a 52 year-old former logger and heating/air conditioning laborer with a "marginal" education, suffered from impairments related to noninsulin dependent diabetes mellitus Type II and arthralgias. (Tr. 13, 17). Despite the plaintiff's impairments, the ALJ determined that he retained the residual functional capacity to perform a restricted range of medium level work. (Tr. 20). Since the claimant would be able to return to his past work as a heating/air conditioning laborer, he could not be considered totally disabled. (Tr. 20).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

In determining that Lawson could return to his past heating/air conditioning work, the ALJ relied heavily upon the information provided by Vocational Expert James Miller. The hypothetical question presented to Miller

5

included an exertional limitation to medium level work along with such non-exertional limitations as a need to avoid hazards, a "limited but satisfactory" ability to interact with supervisors and deal with work stresses, and a reading level below that of the 6th grade. (Tr. 164). In response, the witness indicated that such a person could still perform Lawson's past heating/air conditioning work. (Tr. 164). Therefore, assuming that the vocational factors considered by Miller fairly characterized the plaintiff's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The record does not reveal the existence of more severe functional restrictions than those found by the ALJ. Dr. Paul Pedersen of Knox Family Medicine treated Lawson between August, 2002 and February, 2003. (Tr. 118-126). The only limitation upon the plaintiff's activities noted by the doctor was a need to stop the use of tobacco products. (Tr. 119). Dr. Albert Smolyar examined the claimant in August of 2003 and found no limitations regarding visual function, other than the need for reading glasses. (Tr. 128). Dr. Robert Brown (Tr. 129-139) and Dr. Calixto Hernandez (Tr. 140-148), the non-examining medical reviewers, each opined that Lawson could still perform the full range of medium level work. Although the ALJ ultimately did not find that the plaintiff suffered from a "severe" mental impairment, he did include limitations relating to interacting with supervisors and work stress which were compatible with the findings of Psychologist Gary Maryman, who saw the claimant in September of 1999. (Tr. 116). These reports provide substantial evidence to support the administrative decision.

Dr. Joseph Grady, an examiner, indicated that Lawson could have "mild to moderate" impairment with regard to sitting, standing, walking or lifting. (Tr. 111). Dr. Grady saw the plaintiff in August of 1999, this was almost four years

6

before the plaintiff's SSI protective filing date and, so, was outside the relevant time frame.[1]  Even if these restrictions were considered more severe than those found by the ALJ, the claimant continued to perform the heating and air conditioning work to which the ALJ found he could return, for many years, despite them.  Therefore, this opinion does not support the plaintiff's claim.

As previously noted, the ALJ determined that Lawson had a "marginal" education.  The plaintiff asserts that this finding was erroneous and that the record indicates that he is illiterate.  The plaintiff cites achievement testing by Maryman who indicated that he was illiterate. (Tr. 116).  However, the ALJ found that the claimant was capable of returning to his past relevant work as a heating and air conditioning laborer.  The record indicates that Lawson was able to perform this work despite his problems with illiteracy for 11 years, both before and well after Maryman's September, 1999 examination. (Tr. 155).  In fact, the plaintiff reported at the administrative hearing that he continued to perform this work on a part-time basis even after filing for SSI. (Tr. 155).  Therefore, since illiteracy was clearly not an impediment to performance of the past heating and air conditioning work, any error on the part of the ALJ is harmless.

Lawson also argues that the ALJ erred in failing to find that mild mental retardation was a "severe" impairment.  Maryman diagnosed mild mental retardation after administering intelligence testing which revealed IQ scores in the mild mental retardation range. (Tr. 115-116).  While the ALJ rejected the diagnosis (Tr. 16), the hypothetical question did include the mental restrictions suggested by the examiner (Tr. 116).  As previously noted with regard to the

---

[1]The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date.  Casey v. Secretary of Health and Human Services, 987 F.2d 1230, 1233 (6th Cir. 1993).

illiteracy problem, Lawson performed the past work for many years before and after this testing and, so, Maryman's findings would not appear to be a great impediment to it. Therefore, the undersigned finds no reversible error.

The IQ scores obtained as a result of Maryman's intelligence testing were within range of Section 12.05(C) of the Listing of Impairments. However, the regulations further provide that: "Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period; i.e. the evidence demonstrates or supports onset before the age of 22." 20 C.F.R. Part 404, Subpart P, App. 1, Section 12.05. The vocational expert noted that Lawson's past work as a heating and air conditioning laborer had been skilled and his logging work and had been semi-skilled. (Tr. 164). The ALJ concluded that the ability to perform such work was not consistent with life-time mental retardation and the undersigned agrees. (Tr. 16). Therefore, no Listing section is met.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the ___/5___ day of February, 2006.

G. WIX UNTHANK
SENIOR JUDGE

8